**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0199-23
A-0220-23

IN THE MATTER OF THE
APPLICATION OF THE
TOWNSHIP OF WAYNE and
THE PLANNING BOARD OF
THE TOWNSHIP OF WAYNE.

_____

Argued December 19, 2024 – Decided April 24, 2025

Before Judges Marczyk, Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2396-15.

Mary Anne Groh argued the cause for appellant Township of Wayne in A-0199-23 (Cleary Giacobbe Alfieri Jacobs LLC, attorneys; Mary Anne Groh, of counsel and on the briefs).

Matthew J. Cavaliere argued the cause for appellant Planning Board of the Township of Wayne in A-0220-23 (Cavaliere & Cavaliere, PA, attorneys; Matthew J. Cavaliere, of counsel and on the brief).

Matthew J. Cavaliere argued the cause for respondent Planning Board of the Township of Wayne in A-0199-

23 (Cavaliere & Cavaliere, PA, attorneys; Matthew J. Cavaliere, of counsel and on the brief).

Mary Anne Groh argued the cause for respondent Township of Wayne in A-0220-23 (Cleary Giacobbe Alfieri Jacobs LLC, attorneys; Mary Anne Groh, of counsel and on the briefs).

Derek W. Orth argued the cause for respondent Avalonbay Communities, Inc. (Inglesino Taylor, attorneys; John P. Inglesino and Derek W. Orth, of counsel and on the brief).

PER CURIAM

In this builder's remedy suit, we consider, back-to-back, the appeals of the Township of Wayne (Township) and the Planning Board of the Township (Board) (when referred to collectively, "Wayne") from trial court orders of: (1) August 8, 2023, finding Wayne acted in bad faith, and otherwise impermissibly, when the Board adopted a supplemental memorializing resolution, thereby breaching a Settlement Agreement entered into by Wayne and intervenor, AvalonBay Communities, Inc. (Avalon), and vacating the resolution and allowing Avalon attorney's fees as provided under the Settlement Agreement; and (2) December 19, 2023, setting the attorney's fees amount at $28,909.52 and, for reasons similar to those stated in the August order, granting Avalon per diem penalties, as permitted by the parties' Settlement Agreement, in the amount

2

of $112,000.[1]  Based on our careful review of the record and application of well-established legal principles, we vacate both orders and reverse.

We recite the history of this matter to provide context and perspective.  In July 2015, Wayne "filed a declaratory judgment [action] seeking a declaration that its zoning was constitutionally compliant and moved for immunity from builder's remedy litigation."  In November 2015, the trial court "entered an [o]rder which granted [Wayne] . . . immunity from exclusionary zoning actions

---

[1]  "[A] 'builder's remedy' [is] . . . granted where a developer had brought suit that resulted in the invalidation of a municipal zoning ordinance on Mount Laurel grounds and in the adoption of a conforming ordinance."  Hill Dev. Co. v. Bernards, 103 N.J. 1, 29 n.4 (1986) (citation omitted).  "The Mount Laurel series of cases [Southern Burlington County NAACP v. Township of Mount Laurel, (Mt. Laurel II) 92 N.J. 158 (1983); Southern Burlington County NAACP v. Township of Mount Laurel, (Mt. Laurel I) 67 N.J. 151 (1975),] recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low-and moderate-income families." In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 3 (2015).

. . . [and] appointed . . . [a] Special" Adjudicator.[2] Avalon was granted permission to intervene in the matter.[3]

In February 2019, Avalon advised the Special Adjudicator "that it had entered into an agreement" to acquire approximately twenty-seven acres of land in the Township. Avalon advised that it planned to develop the site "with a significant set-aside for affordable housing." Avalon sought mediation, through the Special Adjudicator, with Wayne.

On October 19, 2020, the Special Adjudicator reported that "[d]espite countless settlement discussions, mediation sessions, [and] case management conferences, . . . Wayne[] . . . ha[d not] authorized [a] settlement agreement[]" with Avalon. The Special Adjudicator reported Wayne's: (1) reluctance to engage in mediation; (2) burdensome document requests and premature "engineered site plan[]" requests; (3) agreement to "conceptual settlement[s]" only to "backtrack[]"; (4) rejection of Avalon's proposal based on issues that

---

[2] At the time of the appointment, the designation was "Special Master." However, in 2024, the title "Special Master" was abolished and replaced with the title "Special Adjudicator." See R. 1:21-5. Therefore, we use the "Special Adjudicator" title. The Supreme Court has specifically approved the use of Special Adjudicators to assist the court in fashioning remedies in the complex world of Mount Laurel litigation. See Mt. Laurel II, 92 N.J. at 281-85.

[3] Avalon's initial involvement concerned a different property than the one at issue in this appeal.

A-0199-23

Wayne's "legal and planning staff" had already offered their input; and (5) refusal and unwillingness to provide counteroffers. The Special Adjudicator noted that "[w]hile [she could ]not say that Wayne ha[d] always acted in bad faith . . . at this time [she could ]not say the same [wa]s true." Therefore, the Special Adjudicator recommended Wayne's immunity be revoked.

On November 10, 2020, the trial court entered an order revoking Wayne's immunity. The trial court incorporated the Special Adjudicator's report into the order. In the order, the court stated it found that:

> 3. . . . after the passage of more than five years and concerted procrastination and delay, the Township has not acted, with good faith effort and reasonable speed, to voluntarily achieve constitutional compliance with its . . . affordable housing obligation.
>
> 4. . . . the Township has not acted in good faith, and has, to the contrary, acted in bad faith in its prosecution of this matter.
>
> 5. . . . the Township has acted to avoid compliance with its obligation to create a realistic opportunity for the creation of its fair share of the regional need for low- and moderate-income housing, and it is thus constitutionally non-compliant with its . . . affordable housing obligation.

In January 2021, the parties executed a written Settlement Agreement. As relevant here, the Settlement Agreement provided the Board: (1) "shall

A-0199-23

promptly deliberate on [Avalon's] SPA[4] and vote"; (2) "[f]ollowing [its] vote . . ., shall memorialize its decision regarding the SPA in a written resolution"; and (3) "promptly publish notice of its decision as provided by law."

Further, the Settlement Agreement included:

> The parties acknowledg[ment] that [Avalon] w[ould] incur substantial costs if the deadlines set forth herein [we]re not achieved by the dates provided. As a result of the foregoing, if any deadline or timeframe set forth herein that is the responsibility of [Wayne] . . . is not achieved in accordance with the timeline set forth . . . there shall be a penalty in the amount of five hundred ($500) per day ("Per Diem Penalty"), excepting acts of god or inclement weather cancellations or the like provided that [Wayne] . . . takes the required action no later than the next regular or special scheduled meeting. [Avalon] shall receive a credit ("Credit") for each day that the action, decision, meeting, or similar item is not acted upon by [Wayne] . . ., as the case may be, or does not take place by the appropriate deadline. . . . [Avalon] shall be entitled to apply the Credit towards any fee that is due and payable to the Township in the ordinary course of development [of] the Property, such as, but not limited to, application fees, building or construction permits, or connection fees for sanitary sewer or potable water.

In addition, that Settlement Agreement provided for Wayne to "fully cooperate and assist with Avalon's efforts" and "expedite the review and approval of all necessary governmental approvals."

---

[4] Site Plan Application.

Lastly, the Settlement Agreement provided that it

> may be enforced through a motion to enforce litigant's rights or a separate action filed in Superior Court, Passaic County. In the event that any Party defaults under this Agreement, then the defaulting Part(ies)y shall reimburse the non-defaulting Part(ies)y for all legal and professional fees and expenses incurred in connection with the enforcement of this Agreement, if applicable.

In March 2021, the trial court approved the Settlement Agreement, and the Township passed an ordinance rezoning Avalon's property. In December 2021, Avalon filed its SPA with the Board. The Board held hearings from April 2022 through June 2022. The Board heard testimony regarding the need for elevators in the proposed buildings and the parties discussed elevators in planned Buildings "C," "D," and "E." On June 12, 2022, the day before the hearings closed, Avalon's attorney emailed Wayne's attorneys:

> To follow up, Avalon accepts the proposal discussed . . . . To sum up, Avalon will agree to install an elevator in Building E if . . . the . . . Board and the governing body approve one additional story with no more than 10 total units . . . .
>
> In terms of procedure, Avalon will bring its affirmative presentation to a close on Monday, [June 13] and seek a vote at that meeting. Avalon will be seeking approval for the project as presented with no elevator in Building E. All parties . . . will have to amend the [S]ettlement [A]greement and the zoning ordinance for the property to permit the additional units in Building E. In terms

7

of timing, we propose the following schedule: (i) June 15[] – [Township] resolution authorizing amendment to [S]ettlement [A]greement and introducing (via title only), an amended zoning ordinance; (ii) . . . [B]oard consistency review on June 27[]; (iii) ordinance adoption on July 20[], 2022.

Once the ordinance is adopted and appeal periods pass, Avalon will file an application seeking amended site plan approval for the additional story and units, with an elevator in Building E.

On June 14, 2022, Avalon's attorney emailed the Board's attorney and stated the prior "email represent[ed] Avalon['s] . . . willingness to amend the settlement in accordance with the terms therein."

The next day, the Board's attorney responded that he "started going thru the Settlement Agreement for changes and [he] asked the planners to similarly go thru the zoning for changes to accommodate the additional 10 units."

The Board's attorney also emailed Avalon's and the Township's attorneys and advised he would "be sitting down to draft the resolution shortly." He requested Avalon's attorney to provide its "list of submissions" and "hearing exhibits."

On June 20, 2022, Avalon's attorney responded, including the Township's attorney, and stated he "was away last week and had to deal with" another

8

litigation matter. He stated he would "put all the docs together as soon as possible." He stated he was "[s]orry for [the] delay in responding!"

On July 8, 2022, the Board's attorney emailed Avalon's and the Township's attorneys. He stated he was "trying to work on the reso . . . and . . . wanted to follow up on the docs [they] were putting together. Please send as soon as possible. Thanks."

In response, Avalon's attorney advised "[t]hanks for reaching out. [We] will respond but we are taking a stab at a draft resolution for your consideration which we will get to you next week. Just trying to make things easier."

The Board's attorney responded, "I always appreciate the help but in the meantime if you could send me that list of exhibits so I could cross check agai[ns]t what I already have, that would be helpful as well."

On August 4, 2022, the Board's attorney emailed Avalon's and the Township's attorneys. To Avalon's attorney he stated he "wanted to follow-up . . . re: Lists and draft reso. Thx."

In an August 7, 2022 email from the Board's attorney to Avalon's and the Township's attorneys, he stated:

> Subject: RE: AVB Wayne Planning Board Approval &
> Amended Settlement Agreement

Attachments:  Wayne - Avalon[] Amdmt to Settlement Agmt - Draft.docx

     . . . .

[Avalon's attorney],

I know you were away . . . part of last week, hopefully Avalon[] will be on the top of your list when you get back tomorrow.

     . . . .

Re: Plan Board Reso.
Please be sure to send me your draft Avalon[] Reso asap, so I can review your[]s.

Re:  The extra 10 units for Bldg E.
We[']v[]e drafted a proposed Amendment to Settlement Agreement which is attached for your review.  We'd like to get this in front of the Planning Board at the same time as the Avalon[] Reso, then send it over to the Council.  The Agreement is 'short and sweet' and contains the proposed revised zoning ordinance.  The deal is:  in exchange for an elevator in Bldg E, Avalon[] will get an extra 10 housing units for Bldg E.  . . .  For the deal to work, we need [the Special Adjudicator] and FSHC[5] to weigh-in.  We spoke to [the Special Adjudicator] about it; she's on board, and in[]fact she agrees (st[r]ongly) that all of the building[s] should have elevators, that the +10 makes sense . . . .  So, she endor[s]es it.  Since she is on board, we thought it wise to ask [the Special Adjudicator] to speak to FSHC.  She spoke to [a representative from FSHC], he is ok with it . . . .

---

[5]  Fair Share Housing Center.

10

. . . .

So, I've set the agreement up that way.

. . . .

Please review and let me know.

In an August 9, 2022 email from the Special Adjudicator to all the attorneys, she stated that she "thought we were doing elevators in all the buildings?" In an email response, Avalon's attorney stated:

> Re: AVB Wayne Planning Board Approval & Amended Settlement Agreement
>
> [To the Board's attorney,] I have the draft resolution which will be going out later today or tomorrow for your review. [To the Special Adjudicator], Avalon will do the elevator . . . with the additional units. But that requires another story . . ., which requires an amended [S]ettlement [A]greement and then an amended ordinance to avoid a D variance. So it's a bit of a process . . . .

On August 24, 2022, the Board's attorney emailed Avalon's attorney stating he "wanted to check . . . on Agmt & reso."

In an August 26, 2022 response, Avalon's attorney stated:

> Re: AVB Wayne Planning Board Approval & Amended Settlement Agreement.
>
> . . . .

11

I apologize that we are taking so long on this. Well beyond my expectations. The resolution is drafted and circulated internally multiple times. I am waiting for one final person at Avalon to review it . . ., and I am told that I will be able to send out . . . .

Pretty much same thing for the draft agreement. Waiting for someone to review and give me the ok on my edits.

My apologies again.

On August 29, 2022, Avalon's attorney emailed a "draft resolution of approval" to the Board's attorney for his "consideration."

In a September 6, 2022 email from the Board's attorney to Avalon's attorney he explained:

So, here's where we are. I ran thru your draft reso, and the form of reso that I had begun drafting. I used your[]s as a base . . . and modified your[]s accordingly. . . . this is a work in pro[gr]ess—I'll need to give it another go-thru. Once you and I can get thru the basics, I'll need to have an internal review on this end. . . .

Also, attached is the form of Settlement Agreement revision that I [ha]d sent to you back on Aug 24[]. I'd like to move both the reso and the Agreem[e]nt before the [B]oard at the same meeting.

He further stated that he "was hoping for the Board's next meeting, . . . [but] that doesn't give [them] much time."

A-0199-23

In an October 7, 2022 email, Avalon's attorney provided Wayne's attorneys with a "revised resolution." In the email, the attorney stated: "this redline includes the following: (i) the revisions you made which we accepted . . . ; (ii) the revisions you made which we deleted . . . ; and (iii) a few additional clean up items that I added."

The resolution was not presented to the Board at its October meeting. In a November 2, 2022 email, Avalon's attorney requested the resolution be considered at the Board's November 14, 2022 meeting. However, the resolution was not considered at the November 14, 2022 meeting. A week later, Avalon served the Board with a notice of default letter, pursuant to the Settlement Agreement, and requested the Board list the resolution at its November 28, 2022 meeting or it would seek judicial relief.

The Board's attorney responded on November 23, 2022, explaining:

> While the resolution is ready for final internal review, I am still awaiting your comments to the draft amendment to [the] Settlement Agreement in this matter. As you no doubt recall, I had advised and you accepted that the resolution, as well as the amendment to the Settlement Agreement would be presented to the Board at the same meeting. Although I have your comments to the resolution, as I indicated, I still have no comments to the amendment to the Settlement Agreement.
>
> . . . .

13

You will recall that along the way, various issues arose, one of which had to do with the Board's desire for elevators to be included in the proposed Avalon[] buildings, which resulted in Avalon[]'s agreement to install elevator[]s in additional but not all buildings, and further discussions resulting in a proposal by the Township to permit Avalon[] to increase the total number of units in the project by ten units (one of which would be inclusionary), in exchange for Avalon[]'s agreement to also install an elevator in the one remaining building. You will recall that the details of the latter were not worked out until the meeting of June 13[] and it was resolved that the modifications would take the form of an amendment to the January 8, 2021 Settlement Agreement.

Immediately after the June 13[] hearing, Wayne's attorneys and planners began work on drafting the proposed Settlement Agreement amendment as well as amendment to the zoning ordinance in order to accommodate the project amendments (the additional ten units and elevator). That proposed amendment was sent to your office on August 24, 2022. . . .

. . . .

I had indicated . . . that the Township's goal was to get the resolution and the Settlement Agreement amendment drafted and finalized as soon as possible and for the resolution and amendment to be presented to the Board simultaneously. I specifically indicated that the simultaneous presentation of the resolution and the amendment were critical.

As soon as I received your draft, on August 29[], I began reviewing it and by way of my email dated September 6[] . . . I sent comments and proposed revisions back to your office, as well as another copy

14

of the proposed form of amendment to the Settlement Agreement that I had previously sent.  I note that in my revisions, I made reference to the anticipated project amendment accommodating the additional ten units and the elevator which I felt was appropriate inasmuch as same was spread upon the record at the June 13[] meeting.

You . . . were troubled by the form of those revisions resulting in a conference call where we discussed the resolution at length.  It was your opinion that it would be unwise to include reference to the amendment in the resolution, and after discussion, you convinced me.  You concurred in the idea that the Settlement Agreement amendment and the resolution would be presented simultaneously.  The way we left it was that [you] would take charge of further amendments to the resolution and forward to me as soon as possible along with your comments as to the Settlement Agreement for Wayne's review.  . . .

By way of email dated October 7, 2022, I received [your] email transmitting . . . further revisions to the resolution, which I reviewed, and generally accepted, subject to internal review which I intended to conduct when we received your comments to the proposed amendment to the Settlement Agreement. . . .
. . . [T]o date, Wayne has not received any comments to the proposed amendment to the Settlement Agreement, and those lack of comments are responsible for stall[ing] the process.  . . .

. . . .

The Planning Board's next meeting is this Monday, November 28[], which at this juncture is not realistic for presentation of both the resolution and the

15

amendment to the Settlement Agreement. The Board's next meeting is December 12[] [and] I see no reason why the resolution and the amendment cannot be presented to the Bo[a]rd at that meeting.

Thus, I would urge you to review the amendment and provide any comments that you may have so that we all may continue with this process. If the agreement is acceptable in its current form, I will prepare the signature version. . . .

On December 9, 2022, the Board's attorney emailed Avalon's attorney and the Special Adjudicator, attaching the "current version of draft Avalon[] Reso." He stated he accepted Avalon's changes that he agreed with; rejected changes he did not agree with, with an explanatory comment; and added new changes. Further, he noted:

As you'll recall, my original plan was to present the Reso to the Board at the same time as the proposed Amendment to the Settlement Agreement (for the proposed additional elevator in exchange for 10 additional units). Avalon[] has now objected to holding off on the Reso until the proposed Amendment is resolved and wants the Reso to be presented without the Amendment. Wayne has very reluctantly agreed and looks forward to finalizing the Amendment asap.

I'd like to circulate the Reso to the Board over the weekend—asap. Take a look and give me a call.

In an email response the same day, Avalon's attorney stated: "Thank you . . . we are reviewing." The next day, the Board's attorney emailed Avalon's

16

attorney to "circle back." In an email response, Avalon's attorney advised he would be "sending . . . an email in a bit." He "had to collect client comments."

Later that day, Avalon's attorney emailed Wayne's attorneys and the Special Adjudicator. He stated while "[w]e don't necessarily agree," Avalon could "live with most things to help move this forward," but offered two additional comments. The Board's attorney responded with suggestions to address the two comments. Avalon's attorney replied, "I think we're good."

The next day, the Board's attorney emailed Avalon's attorney "the final version that [he] submitted to the Board." At its December 12, 2022 meeting, the Board passed the resolution (Initial Resolution). In the Initial Resolution, the Board, in part, memorialized:

> Building E- 29-unit multifamily residential building
>
> . . . .
>
> 21. During the course of the public hearings, the Board and . . . [Avalon] had discussions about the inclusion of ambulance stretcher compliant passenger elevators in buildings "C", "D" and "E". In that regard, the Board received testimony and commentary from various Township personnel recommending and otherwise requesting that such elevators be included in building "C", "D" and "E" for the benefit, health, safety and welfare of the residents and of the first responders; the Board shared such concerns. However, according to testimony presented by . . . [Avalon]'s professionals, the question of presence or absence of such elevators in

such buildings is controlled exclusively by the UCC,[6] which Code does not require such elevators for those particular buildings. Nonetheless, as a consequence of various discussions between the Board and . . . [Avalon], [Avalon] agreed to amend the Application so as to include such elevators in building "C" and "D". [Avalon] declined to include such elevator in building "E".

Our review of the Board's meeting minutes reveals the following:

Board Comments:
Mayor Vergano noted that the agreed upon elevator for Building "E" and the additional 10 units in that building were missing from the resolution. He stated that these conditions were very important to the Board and he suggested amending the resolution to include said requirements.

[The Board's attorney] suggested that the Board vote on the resolution in its current form but add the caveat to have a supplemental resolution which would include these requirements presented at a future meeting.

The Board agreed to same.

At a January 23, 2023 Board meeting, without notice to Avalon or the public, the Board passed a Supplemental Resolution to its Initial Resolution. In part, the Supplemental Resolution memorialized:

E. Lot 16 was proposed to contain 418 multi-family apartment units in five . . . buildings . . . . The composition of the space for each building on Lot 16 was proposed as follows:

---

[6] Uniform Construction Code.

. . . .

Building E - 29-unit multifamily multi-story residential building.

. . . .

6.  During the course of the public hearings, the Board and [Avalon] had discussions about the inclusion of passenger elevators, compliant with . . . UCC . . . requirements for ambulance stretcher access, in each of the proposed . . . multi-story building, including buildings "C", "D" and "E".  In that regard, the Board received testimony and commentary from various Township personnel, including Township first responders, recommending and otherwise requesting that such elevators be included in building "C", "D" and "E" for the benefit, health, safety and welfare of the project's residents and guests and of the first responders; the Board shared such concerns and is of the opinion that same are necessary, appropriate and wise for the project as a whole and for each individual multi-story building.  As a consequence of various discussions between the Board and [Avalon], [Avalon] agreed to amend the Application so as to include such elevators in building "C" und "D".  [Avalon] declined to include such elevator in building "E".

NOW, THEREFORE, BE IT RESOLVED by the . . . Board . . . that said [Initial] Resolution . . . be and hereby is amended and supplemented, but not otherwise changed or modified, by way of the [Supplemental] Resolution, as follows:

1.  As a condition of approval, and for the reasons set forth herein and at the said public hearings, proposed Lot 16, Building "E" shall include not less

19

than one . . . passenger elevator[], compliant with . . . UCC requirements . . . .

On January 28, 2023, Avalon's attorney emailed the Board's attorney and the Special Adjudicator.  He inquired:

> [D]id the [Board] unilaterally, without notice to my client, change Avalon[']s resolution of approval to add elevators to a building, which elevators are not required by code nor shown on the approved plans?  If so, this is the most absurd act I have ever seen performed by a public entity in my career.  Obviously, if that is what the Board did, we will be filing against the Board and Township for, among other things, breach of the [S]ettlement [A]greement.

In another email that day, Avalon's attorney advised Wayne's attorneys, and the Special Adjudicator:

> [W]e will be sending both [of] you, in regards to the . . . [B]oard, and yourself, a formal litigation hold letter . . . .  We will also be sending such letter to [the Township's attorney].  This communication is intended to advise you of same in advance of such formal letter. [Further to the Board's attorney], I am compelled to advise you (though I do not relish this part) that recent events will likely implicate you directly as a party defendant in Avalon[]'s emergent lawsuit – so you should get conflicts counsel lined up.

In response, the Board's attorney emailed the same group and stated the

> emails seem to me like a lot of unnecessary fanfare-- I'm not sure why there is a surprise--I didn't keep it a secret in December when the Board addressed the [R]eso at the December hearing, when the Board was

considering the Avalon[] Reso, there was opposition among the Board members unless the Reso included condition for an elevator in Building E and they wanted the Reso to include that condition. I recommended the Board proceed with the [R]eso as presented and if need be, deal with a [S]upplemental [R]eso at a subsequent meeting. They so wanted, and thus adopted a [S]upplemental [R]eso, which is attached.

The [S]upplemental [R]eso simply applies condition that Bldg E contain an (medical gurney sized) elevator (just like the other buildings). No mention is made of the +10 units offered by the Board--that might imply that the Board was granting a use variance (you'll recall our discussion of that point) because the additional 10 units are not contemplated in either the present zoning or in the [S]ettlement [A]greement. With reference to [the] other email . . ., I do not see where the Board's decision that each of the project's non-townhouse buildings needed to have elevators for the sake of general health, safety and welfare could, under even the most liberal interpretations, be considered as a breach or violation of the Wayne -- Avalon[ S]ettlement [A]greement. The agreement doesn't address elevators and does contemplate an application to the [B]oard for the usual land use requirements. I also do not see any basis for legal action against me, individually, as implied by [the] email, but I do see where such an assertion would support a claim by me of tortious interference.

I can appreciate, based upon our earlier conversations, that Avalon[] might want to challenge the Building E elevator condition unless the deal also includes the additional 10 units discussed at hearings and that it would not want to agree/accept the additional 10 units while the Avalon[]--Valley Nat Bank litigation is still going on. The Building E elevator condition is

21

A-0199-23

contained in a discreet [S]upplemental [R]eso which will make things easier for all to address, if need be. You may want to consider an agreement to enlarge the 45-day 'appeal' period in hope that the Avalon[]-VNB suit will be resolved soon paving the way for an Avalon[]--Wayne amendment to the [S]ettlement [A]greement and zoning.

As a consequence of the Supplemental Resolution, and its inclusion of the Building "E" elevator, Avalon, in May 2023, filed an action in lieu of prerogative writs[7] and a motion in aid of litigant's rights. Avalon challenged the Board's adoption of the Supplemental Resolution and sought its vacatur and the reinstatement of the Initial Resolution. In addition, Avalon contended the Board's adoption of the Supplemental Resolution was a breach of the Settlement Agreement, and therefore it sought attorney's fees, incurred for the motion, and a per diem penalty as provided under the Settlement Agreement.

On June 20, 2023, the trial court heard the parties' oral arguments on Avalon's motion. In addition, the Special Adjudicator stated that she could not "think of a scenario where . . . there was a resolution adopted" and "another resolution subsequent to that." She further stated "[i]t seem[ed] unusual . . . that the [B]oard can go back and add conditions of approval to the resolution that were not agreed to at the hearing."

---

[7] The prerogative writs matter was ultimately dismissed.

The trial court stated that "Wayne ha[d] been habitually delaying" and noted its prior decisions when it found Wayne acted in bad faith. The court stated it was "shocked" that Wayne "would [reach] an agreement . . . memorialize[] it in a resolution . . . . And then . . . with no notice . . . adopt[ a] [S]upplemental [R]esolution which added a term unilaterally . . . although it had been talked about." The trial court reserved its decision to allow it additional time to "reread" the submissions.

On July 18, 2023, the parties returned to the trial court. The trial court stated it was granting Avalon's motion. It explained that it "incorporate[d] by reference [the Special Adjudicator]'s October 19, 2020" report, that "list[ed] chapter and verse of all the delay tactics and the failures to mediate . . . with Avalon." The court noted "these things lingered on" and led it to revoke immunity on November 10, 2020.

The court found the Board's position, that it later determined the Initial Resolution only memorialized a "conditional approval" and "went back and . . . unpassed . . . it," was "quite frankly . . . a tactic in a long line of tactics that Wayne ha[d] utilized to delay meeting its constitutional obligation of affordable housing." The court found Wayne was "still not acting in good faith," because "approving" and then "unapproving" the resolution was an "act[] in bad faith."

23

The court stated it was "going to grant [Avalon's] application [and] enforce the [Initial R]esolution that the . . . Board passed." In addition, the trial court stated it would award Avalon reasonable attorney's fees and would "consider the per diem [penalty] as well" pending Avalon's further submissions.

In its August 8, 2023 order, the trial court explained:

> [T]he Board . . . approved Avalon's [SPA] at its meeting held on June 13, 2022; and the Board memorialized its approval of Avalon's SPA on December 12, 2022; and by way of [S]upplemental [R]esolution on January 23, 2023, imposed an additional condition on Avalon's SPA, . . . requiring an elevator to be included in Building "E" . . . .
>
> . . . .
>
> 2. The [S]upplemental [R]esolution memorialized by the Board on January 23, 2023, . . . be and hereby is invalidated, and set aside and said resolution is of no force and effect.
>
> 3. The [Initial R]esolution memorialized by the Board on December 12, 2022, . . . be and hereby is affirmed and remains in full force and effect.
>
> 4. The [c]ourt finds that the Board's adoption of the Supplemental Resolution constitute[d] bad faith conduct.
>
> 5. The [c]ourt hereby awards Avalon reasonable counsel fees and costs incurred in connection with the [m]otion. . . . Avalon shall submit a [c]ertification of [s]ervices detailing its fees and costs incurred in connection with the [m]otion.

24

. . . .

8. . . . Avalon is permitted to submit an application for award of a [p]er [d]iem [p]enalty it also sought in connection with the [m]otion. . . .

. . . .

11. The [c]ourt directs that the Special [Adjudicator]'s report, dated October 19, 2020, be affixed to this [o]rder.

The parties filed additional materials with the trial court including Avalon's brief and certification in support of its request for attorney's fees and per diem penalty, and Wayne's opposition.

On December 8, 2023, because of a retirement, the matter was assigned to a different trial court judge. The trial court hearing oral arguments, explained it was considering the amount of attorney's fees to be awarded to Avalon against Wayne, pursuant to the August order, and whether a per diem penalty should be enforced.

In a written opinion, accompanying the December 19, 2023 order, the trial court noted the "matter involve[d] Wayne['s] . . . constitutional obligation to provide its fair share of affordable housing." Further, that "[t]here ha[d] been much litigation between" the parties "regarding the approval of the Avalon [p]roject." The court noted Wayne's immunity was waived, in part, because of

the Special Adjudicator's report that detailed Wayne's "inability to resolve the many pending mandated inclusionary developments" and failure to "act[] proactively in resolving . . . settlements."

The trial court found:

> After extended negotiations, the parties entered into the [Settlement] Agreement on January 8, 2021. In December 2021, Avalon filed a [SPA] with the . . . Board seeking preliminary and final major site plan approval along with incidental bulk variance relief . . . . After four public hearings, in which Avalon and design consultants presented their application, the Township and . . . Board determined it was necessary for Avalon to include an elevator in certain multifamily buildings, referred to as Buildings C, D, and E. These buildings are expected to contain a total of approximately 98 units.
>
> While Avalon initially disputed the need to provide elevators in Building C, D, and E they thereafter stipulated to install one elevator in Building C and one in Building D. The Board voted and approved Avalon's application on June 13, 2022.
>
> After a six[-]month delay, [t]he . . . Board then memorialized Avalon's resolution and application approval on December 12, 2022. The Board's December 12[] resolution included elevators as agreed upon by the parties for Buildings C and D only.
>
> Subsequently, the . . . Board, allegedly, sua sponte and without notice to the public or Avalon, adopted a Supplemental Resolution on January 23, 2023, in which they imposed an additional condition requiring an elevator in Building E.

26

Regarding the amount of attorney's fees and costs to be awarded to Avalon, the trial court noted the parties' Settlement Agreement provided for attorney's fees "in the event that any [p]arty defaults."  The court considered and reviewed Avalon's attorneys' certification and billing invoices.  "[S]atisfied that the attorney[']s[] fees" were "fair and accurate," the trial court awarded Avalon $28,909.52 in attorney's fees.

As to Avalon's claim for a per diem penalty, the trial court stated the parties' Settlement Agreement provided for a per diem penalty.  The court noted Avalon sought per diem penalties for two time periods:

> [A] total [p]er [d]iem award of $123,000[] for the 49 days between the [o]riginally scheduled memorialization on October 24, 2022 and the actual memorialization on December 12, 2022, and the 197 days between the Supplemental Resolution on January 23, 2023 and August 8, 2023, the date of the written [o]rder.  In the alternative, Avalon s[ought] a total [c]redit of $112,500 for the 49 days, the difference between the original memorialization date and the actual memorialization, and 176 days of penalties between the Supplemental Resolution and July 18, 2023, the date of the [c]ourt's verbal decision on the record.

The trial court considered the Board's "argu[ment] that Avalon[] ha[d] not actually demonstrated that [it was] damaged due to the delay."  However, the court stated it was "satisfied that Avalon [was] damaged by the multiple delays."

27

The trial court referred the parties to the "August 8, 2023 [o]rder and [the] attached [Special Adjudicator report for an] outlin[e of] the significant delays Avalon ha[d] faced throughout the entirety of the project."

As to the first period of time, the trial court accepted Avalon's "argu[ment] that the [p]arties agreed to post the [m]emorialization of the Settlement Agreement on the agenda for the . . . Board's October 24, 2022, meeting," however, "the Board did not memorialize the resolution until December 12, 2022," because of the "Board's inability to vote on the memorialization of the Settlement Agreement." The trial court noted the Township did "not dispute that the resolution was in fact delayed 49 days, resulting in memori[ali]zation on December 12, 2022."

The trial court found the Settlement Agreement was "clear in its language [providing] that when a resolution is the responsibility of the Township and/or Board, and there is a delay to that resolution, Avalon may seek a per diem penalty." The court stated it was "satisfied that Avalon . . . demonstrated facts sufficient to warrant a [p]er [d]iem penalty for the initial 49-day delay multiplied by the $500 per day rate agreed upon," and awarded Avalon "a [p]er [d]iem credit in the amount of $24,500."

As to the second period of time, the trial court stated it was "persuaded" by Avalon's argument "that the Supplemental Resolution essentially voided the [I]nitial [R]esolution the Board enacted on October 24, 2022." Therefore, "[i]nstead of focusing on the next steps on the project, Avalon was forced to litigate the validity of the Board's Supplemental Resolution." The court stated "[t]he Board's actions, memorializing a resolution unlawfully, severely delayed Avalon[]'s ability to continue with the project." The trial court noted Avalon was seeking the per diem penalty for the time after the "bad faith" adoption of the Supplemental Resolution on January 23, 2023.

The trial court was "persuaded to interpret the [adoption of the] Supplemental Resolution as an act by the . . . Board, either intentionally or unintentionally, to further delay the adoption of the Settlement Agreement and overall project." The court found "[t]he Board, by enacting the Supplemental Resolution, rendered the [I]nitial Resolution unworkable and essentially void." Under these circumstances, the court explained, "the Board once again delayed the deadline and timeframe set forth in the Settlement Agreement." Therefore, "[i]t was the Board's bad faith that caused the delay, and it should not escape the penalty provision incorporated in the agreement for such delay tactics."

A-0199-23

For the second period of time, the trial court imposed the per diem penalty from the date of the Supplemental Resolution, December 12, 2022, to July 18, 2023, the date of the trial court's oral opinion invalidating the Supplemental Resolution and reinstating the Initial Resolution. The court awarded Avalon a credit, at the $500 per diem rate for 176 days, of $88,000.

On appeal, Wayne argues the trial court erred because: (1) there was no evidence the Township or the Board acted in bad faith; (2) the Board's adoption of the Supplemental Resolution was proper; and (3) neither the Township nor the Board caused a delay or defaulted under the Settlement Agreement and, therefore there was no basis to award Avalon per diem penalties or attorney's fees.

"Appellate review of a trial judge's findings of fact is limited by well-settled principles." Walid v. Yolanda for Irene Couture, 425 N.J. Super. 171, 179 (App. Div. 2012). Factual "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special

deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  "We also review mixed questions of law and fact de novo." Cumberland Farms, Inc. v. N.J. Dep't Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

## Bad Faith

"'[B]ad faith' [is] 'a thing done when it is in fact done dishonestly.'" Lustrelon, Inc. v. Prutscher, 178 N.J. Super. 128, 144 (App. Div. 1981) (quoting New Amsterdam Cas. Co. v. Nat'l Newark & Essex Banking Co., 117 N.J. Eq. 264, 277 (N.J. Ch. 1934)).  "It 'contemplates a state of mind affirmatively operating with a furtive design or some motive of interest or ill will.'"  Ibid. (quoting New Amsterdam, 117 N.J. Eq. at 277).

"Bad faith is not simply bad judgment or negligence, rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Borzillo v. Borzillo, 259 N.J. Super. 286, 292 (Ch. Div. 1992) (citations omitted).  "'Bad faith' has . . . been defined as an intent to mislead or deceive another, or a neglect or refusal to fulfill some duty or contractual obligation not prompted by some honest mistake as to one's rights or duties, but by some interested or sinister motive."  Ibid.  (quoting Black's Law Dictionary 127 (5th ed. 1979)).

31

"[T]he presence of bad faith is to be found in the eye of the beholder or, more to the point, in the eye of the trier of fact." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 263 (App. Div. 2002). As we have stated, factual "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Walid, 425 N.J. Super. at 179. "[B]ad faith must be judged not only in light of the proofs regarding the [actor]'s state of mind but also in the context from which the claim arose." Seidenberg, 348 N.J. Super. at 262-63.

Avalon has the burden of proving Wayne "acted in bad faith . . . by clear and convincing evidence." Twp. of Readington v. Solberg Aviation Co., 409 N.J. Super. 282, 311 (App. Div. 2009). Under that standard:

> Clear and convincing evidence is evidence that produces . . . a firm belief or conviction that the allegations sought to be proved by the evidence are true. It is evidence so clear, direct, weighty in terms of quality, and convincing as to cause . . . a clear conviction of the truth of the precise facts in issue.
>
> [Model Jury Charges (Civil), 1.19, "Burden of Proof—Clear and Convincing" (rev. Aug. 2011).]

In arguing that the trial court erred in finding that the Board acted in "bad faith," Wayne asserts: (1) the trial court's reliance on the Special Adjudicator's report and Wayne's "past history" was misplaced; (2) the Board did not approve,

in the Initial Resolution, and then "unapprove" in its Supplemental Resolution, Avalon's SPA; instead, the Initial Resolution imposed a condition that was memorialized in the Supplemental Resolution; (3) the trial court failed to defer to the Board's factual finding that an elevator in Building "E" was required and Avalon failed to establish the Board's action was "arbitrary, capricious, or unreasonable"; (4) the trial court's analysis was incomplete because Avalon never provided transcripts from the Board's meetings; and (5) the parties' conduct after the Board's last hearing on Avalon's SPA establishes Wayne did not act in "bad faith."

Avalon counters that our focus should be on Wayne's past, the Board's adoption of the Initial Resolution, and the Board's adoption of the Supplemental Resolution. Avalon asserts our analysis can begin and end there. It argues:

> The bad faith misconduct occurred when the Board adopted a blatantly ultra vires January 23, 2023 S[upplemental] Resolution without any notice whatsoever, which effectively reversed the June 13, 2022 approval and December 12, 2022 [Initial] Resolution—after the record was closed and after approval was already obtained and published—by now conditioning the June 13, 2022 approval on Avalon placing an elevator in Building "E." That is the hallmark of "bad faith."

Further, Avalon asserts the reference to "emails amongst counsel and the [Board's] meeting minutes, . . . are nothing more than red herrings," the

"correspondence between Avalon and the Boa[r]d's counsel" amount to "irrelevant correspondence"; and "there is no need for transcripts" of the Board's hearings because we have the Initial Resolution.

We reject the parties' arguments regarding the extent of the factual record to be considered in evaluating Avalon's claim of "bad faith."  In doing so, we reiterate the analysis requires an examination of the Board's "state of mind . . . in the context from which the claim arose."  Seidenberg, 348 N.J. Super. at 262-63.  Given this perspective, we reject Wayne's argument that the trial court erred in considering the Special Adjudicator's report.  Certainly, Wayne's history, including the trial court's undisputed prior determination that it acted in "bad faith," was relevant to whether that conduct continued or was repeated.

Moreover, we reject Avalon's argument that we do not need to look further than Wayne's history, the Initial Resolution, and the Supplemental Resolution. This cramped view of the record similarly fails to provide the information as to the parties' interactions and understandings required for the contextual analysis.

Instead, we consider the entire factual record including:  (1) Wayne's history; (2) the parties' interactions after they executed the Settlement Agreement; (3) the parties' interactions during and after the Board's hearings; and (4) the Board's adoption of the Supplemental Resolution.

From this broad base of information, we are not convinced the record factually supports a finding that Wayne acted in "bad faith." We start with Wayne's history and acknowledge the trial court's concern, that affordable housing efforts had historically been frustrated, its prior finding of Wayne's bad faith, and its waiver of Wayne's builder's remedy immunity.

Nonetheless, within two months of the waiver of immunity, and no doubt in response thereto, the parties reached a Settlement Agreement that was approved by the court, and the Township passed the required ordinance to effectuate the development.

Thereafter, Avalon filed its SPA. The Board held hearings from April through June. During the hearings, the Board received testimony regarding the need for elevators in all of the proposed buildings. Before the close of the Board's hearings, Avalon agreed to install an elevator in the remaining building, if ten additional units were approved in the building. After the close of the Board's hearings, Avalon reiterated its willingness to amend the Settlement Agreement.

In addition, the attorneys worked on drafting the Board's resolution. There is nothing in the record that demonstrates the Board's attorney worked on the resolution in "bad faith." Instead, the record reveals an open dialogue

A-0199-23

between counsel and a normal back and forth of edits to suit their clients. Those edits were not resolved until days before the Board's hearing.

Moreover, as to the purported settlement regarding the elevator and additional units, the Board's attorney: (1) advised Avalon's attorney as to the timing and steps necessary to effectuate the settlement; (2) drafted and served, a few times, the "proposed Amendment to Settlement Agreement"; (3) requested the "planners" to review the zoning changes necessary to "accommodate the additional units"; (4) advised, multiple times, of his plan to bring the resolution and amended agreement to the Board "at the same time"; and (5) got the Special Adjudicator "on board" who, in turn, obtained FSHC's "ok." Under these circumstances, the record does not factually support a finding of "bad faith."

We recognize the asserted concerns raised by the adoption of the Supplemental Resolution, without notice to Avalon. The concerns assume the Board acted improperly and therefore in bad faith. However, the concerns, alone, do not support a factual finding that the Board's actions were taken in bad faith. Indeed, the Board's actions, even if improper, could reflect "bad judgment or negligence." Borzillo, 259 N.J. Super. at 292. Therefore, the concerns do not rise to the level of clear and convincing evidence of bad faith.

A-0199-23

Further, to make an accurate determination regarding whether the Board acted improperly and in bad faith, the trial court needed to consider the Board's hearing transcripts. "The record is the best evidence of what the [b]oard considered and decided." Park Ctr. at Route 35, Inc. v. Zoning Bd. of Adjustment of Twp. of Woodbridge, 365 N.J. Super. 284, 289 (App. Div. 2004) (quoting Fieramosca v. Twp. of Barnegat, 335 N.J. Super. 526, 533 (Law Div. 2000) (quoting Sherman v. Borough of Harvey Cedars Zoning Bd. of Adjustment, 242 N.J. Super. 421, 430 (App. Div. 1990))). Indeed, "the adoption of [a] memorializing resolution is not the 'decision' but merely a memorialization of that decision." Ibid. (quoting Fieramosca, 335 N.J. Super. at 533). Thus, a trial court must consider "the entire record before the local board . . . to determine what was decided and whether a condition was imposed, notwithstanding the failure to include that condition in the memorializing resolution." Ibid.

Here, a review of the Board's hearing transcripts would have informed the trial court as to the Board's vote in June, the Board's adoption of the Initial Resolution in December, and the Supplemental Resolution in January. Only in the context of the review of those transcripts, could the trial court consider whether the Board acted with bad faith in adopting the Supplemental Resolution

without notice to Avalon. However, the trial court did not undertake this analysis, because it was not provided with the Board's hearing transcripts.

Nevertheless, the assertion that the Supplemental Resolution was adopted without notice to Avalon, does not on its own, provide clear and convincing evidence to support a finding that the Board acted in bad faith when it adopted the Supplemental Resolution.

Therefore, because we are convinced there was insufficient factual support to find Wayne acted in bad faith, we conclude Avalon did not establish bad faith by clear and convincing evidence and vacate that finding.

<u>Resolutions</u>

Our conclusion that Wayne did not act in "bad faith" does not completely resolve the issues surrounding the adoption of the Initial or Supplemental Resolutions. The first trial court stated it was "shocked" the Board adopted the Initial Resolution and then, without notice, adopted the Supplemental Resolution that unilaterally added a condition, the elevator. Thereafter, the court found the Board's position, that the adoption of the Initial Resolution memorialized a "conditional approval" and then "unpassed" the Initial Resolution, was a delay tactic. The second trial court concluded the Board acted "unlawfully" and "sua sponte and without notice to the public or Avalon adopted

a Supplemental Resolution . . . in which they imposed an additional condition requiring an elevator."

"[T]he law presumes that . . . municipal governing bodies will act fairly and with proper motives and for valid reasons." Fallone Properties, L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 560-61 (App. Div. 2004) (quoting Kramer v. Bd. of Adjustment of Sea Girt, 45 N.J. 268, 296 (1965)). Because of the presumption, "the party 'attacking such action [has] the burden of proving otherwise.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81-82 (2002) (quoting N.Y. SMSA Ltd. P'ship v. Bd. of Adjustment, 324 N.J. Super. 149, 163 (App. Div 1999)) (alteration in original). Therefore, Avalon bore the burden to establish the Board's actions concerning the adoption of the Supplemental Resolution were improper.

To sustain its burden, Avalon was required to provide the trial court with the Board's hearing transcripts. See Park Ctr., 365 N.J. Super. at 289 (App. Div. 2004) ("[T]he entire record before the local board must be considered to determine what was decided and whether a condition was imposed, notwithstanding the failure to include that condition in the memorializing resolution.").

Therefore, the assertion that the Supplemental Resolution was adopted without notice to Avalon, does not, on its own, provide sufficient support for a finding that the Board acted improperly when it adopted the Supplemental Resolution.

Instead, a review of the transcripts was necessary to determine whether: (1) notice to Avalon regarding the Board's action in January was necessary or required; (2) the Board improperly imposed a condition, (see N.J.S.A. 40:55D-49(a) that "expressly authorizes planning boards to impose general terms, conditions, and requirements peculiar to site plan approval as related to public health and safety," W.L. Goodfellows & Co. of Turnersville, Inc. v. Wash. Twp. Plan. Bd., 345 N.J. Super. 109, 116 (App. Div. 2001)); and (3) Avalon's rights "vested" and could not be subject to condition, see Britwood Urb. Renewal, L.L.C. v. City of Asbury Park, 376 N.J. Super. 552, 570 (App. Div. 2005).

In the absence of the transcripts, the trial court's finding that the Board acted improperly, and its conclusions that the Board's actions were delay tactics and "unlawful," lacked support in the record. Therefore, we conclude Avalon did not establish the Supplemental Resolution was passed improperly and reverse that determination.

## Breach of Settlement Agreement

The trial court determined that the Board's actions—delaying the adoption of the Initial Resolution and causing delay by adopting the Supplemental Resolution—entitled Avalon to per diem penalties.  In addition, the trial court concluded that Avalon was entitled to an award of attorney's fees because of Wayne's bad faith, its adoption of the Supplemental Resolution, and because Avalon was required to litigate to have the Supplemental Resolution set aside.

## Per Diem Penalties

The trial court's award of per diem penalties was based on two periods of time.  The first was the time between what the trial court considered "the originally scheduled" vote on the Initial Resolution, October 24, 2022, and December 8, 2022, the date of the actual vote on the Initial Resolution.[8]  We conclude there was insufficient evidence in the record to support the conclusion that the resolution was in sufficient form for the Board's consideration in October or that the Board caused a delay until December.

---

[8]  We recognize the per diem award for the first period of time may be encompassed within the trial court's determination that Wayne had acted in bad faith.  Therefore, given our opinion on the issue of bad faith, we could end our analysis.  Nevertheless, for completeness, we consider the delay claim, notwithstanding any finding of bad faith.

The record reveals that in October 2022, Avalon provided a revised resolution to the Board and in November began requesting the resolution be listed on the Board's agenda. However, the parties continued to edit the resolution, and communicate regarding the purported amended settlement, up until a day or two before the Board's meeting when the Board passed the Initial Resolution. In fact, it was only a day or two before the Board's meeting when Avalon's attorney stated, "I think we're good." Under these circumstances, there was insufficient evidence in the record to support a conclusion that the resolution was ready for the Board's consideration in October or that the Board caused a delay until December.

As to the second period of time, between the adoption of the Supplemental Resolution, January 23, 2023, and the trial court's oral decision on July 18, 2023, the award of per diem penalties could only be supported if the Supplemental Resolution was passed improperly. However, as we have stated, that determination could only have been made after consideration of the Board's hearing transcripts, which the trial court did not have.

Therefore, we vacate the award of per diem penalties.

Attorney's Fees

The trial court awarded attorney's fees because of Wayne's bad faith, its adoption of the Supplemental Resolution, and because Avalon was required to litigate to have the Supplemental Resolution set aside. We conclude Avalon did not sustain its burden to establish Wayne acted in bad faith or that the Board's adoption of the Supplemental Resolution was improper. Consequently, we further conclude Avalon did not establish Wayne's default under the Settlement Agreement and vacate the award of attorney's fees.

Because we conclude there was insufficient evidence to establish: (1) Wayne acted in bad faith; (2) the Board improperly passed the Supplemental Resolution, and (3) the Board caused a delay in the adoption of the Initial Resolution, we conclude Avalon did not sustain its burden in these respects and reverse the August and December orders.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0199-23